WILLIAM E. WRIGHT et al.

*v.*

THOROLD W. PELL et al.

[Decided October 22d, 1918.]

1. A wife's deed in which the husband was not made a party, did not convey the husband's right of curtesy, although he was a subscribing witness to it.

2. Where a husband did not join in a wife's deed, the grantee did not receive a legal title to the land, but merely an equitable pledge.

3. Where the mortgagee had merely an equitable title to the land, the husband of the mortgagor not having joined in the conveyance, a decree foreclosing the husband's equity of redemption does not give the mortgagee a legal title to the land, and has no effect upon the husband's curtesy, although the bill alleged joinder of the husband in the conveyance, which allegation the husband admitted by permitting a decree *pro confesso* to be taken against him.

4. Such admission, in a suit for strict foreclosure, does not serve to give the mortgagee legal title to the premises upon entry of a decree foreclosing the right of redemption therein.

On bill, &c.

*Mr. Frank Benjamin,* for the complainants.

*Mr. Arthur T. Vanderbilt,* for the defendants.

STEVENS, V. C.

This is a bill for the specific performance of a contract to convey land. The defence is defective title. The title stands thus: Emily J. Smith, by deed, in form a warranty deed, conveyed the land in question to James N. Wright to secure a loan of $1,050. He gave her an agreement of defeasance. Her husband, Thomas, was not a party to the deed but he subscribed it. Not being a party to it, the deed did not convey his right of curtesy (*Jason* v. *Johnson,* 74 *N. J. Law 530*), and did not vest in the grantee more than an equitable interest. By bill of strict foreclosure, Wright sought to foreclose the interest of the heirs of the grantor, she being dead, and of her husband and certain of her husband's creditors. Following a decree *pro confesso,* there was a decree "that the deed and agreement of defeasance be decreed to be a mortgage upon the land and premises described therein," and there was a reference to a master to ascertain the amount due. The final order was "that the defendants do from henceforth stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to the said mortgaged premises."

The objections to the decree for specific performance are: (1) That Mr. Wright cannot convey the legal as distinct from the equitable title, and (2) that the estate by the curtesy of Thomas

C. Smith (Mrs. Smith having died) has not been foreclosed.
Both of these objections seem to me to be well taken.    What
Mr. Wright got from Mrs. Smith was not a legal title (her hus-
band not having joined in the deed) but an equitable pledge.
*Schickhaus* v. *Sandford, 83 N. J. Eq. 454; Phelps* v. *Morrison,
25 N. J. Eq. 538.*  I am at a loss to understand how the decree
of strict foreclosure could operate to give Mr. Wright more than
Mrs. Smith gave him—that is, an equitable interest in contra-
distinction to a legal one.   It is her equity of redemption *in
what she gave him* that is cut off, and what she gave him was
an equitable and not a legal right.  The present situation of the
title seems to be an irredeemable equitable estate vested in
Wright and a bare legal title outstanding in Mrs. Smith's heirs,
conveyance of which may, of course, be compelled.

In the second place, there is nothing to indicate that Mr.
Smith has lost his curtesy.  It is self-evident that he did not
part with it by deed, because he did not make a deed.  Counsel's
contention that the effect of the strict foreclosure was to de-
prive him of it, is based and based only on the opening para-
graph of the bill praying strict foreclosure.   The allegation,
contrary to the admitted fact, is as follows:  "That Emily J.
Smith being indebted to your orator (James N. Wright) in the
sum of $1,050 *with her husband, Thomas C. Smith,* conveyed
by warranty deed," &c.  This allegation, counsel argues, was ad-
mitted when Smith permitted a decree *pro confesso* to be taken
against him.  It was, undoubtedly, admitted for the purposes of
that suit, and had it been decreed therein that Smith *had* con-
veyed, the decree would have bound him, although founded on an
erroneous conception of the evidence and of the law.  But the
chancellor made no such decree.  He only decreed strict foreclo-
sure of such equity of redemption as the several defendants had:
Smith had no equity of redemption; he had a curtesy.  There is
therefore no *decree* to operate by way of estoppel.  Is, then, the
*allegation,* in itself, an estoppel in a subsequent and independent
proceeding, not because Smith himself made the admission, but
because he allowed the foreclosure bill to be taken as confessed
against him?  The case is at best one of implied admission—
*prima facie* proof—but an admission which an inspection of the

deed would show to have been contrary to the fact. It is doubt-ful, however, whether it could be held to be an admission at all. It is stated in *Taylor on Evidence* §§ *859, 1753,* that bills in chancery are not admissible as proof of the admissions they con-tain, "since the facts stated therein are regarded as nothing more than the mere suggestions of counsel." The reason given applies with peculiar force to the case in hand.

For these reasons I think that defendant cannot be compelled to take the title.